IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

RANDY MCDANIEL                                                                              PLAINTIFF

VS.                                              4:19-CV-00862-BRW

MARKEITH NEAL, Individually and
in his capacity as a police officer for
the City of Pine Bluff, Arkansas;
TAMINA SMITH, Individually and in her
capacity as a police officer for the City of
Pine Bluff, Arkansas; and the CITY OF
PINE BLUFF, ARKANSAS                                                                        DEFENDANTS

# ORDER

Pending is Defendants' Motion for Summary Judgment (Doc. No. 22). Plaintiff has responded and Defendants have replied.[1] For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

I.  BACKGROUND[2]

On August 13, 2017, Plaintiff Randy McDaniel was arrested for shoplifting at a Wal-Mart in Pine Bluff, Arkansas. Wal-Mart loss prevention staff, Defendant Detective Tamina Smith, Defendant Officer Markeith Neal, and Officer Perry stopped Plaintiff from exiting the store and escorted him into the loss prevention office.

When they arrived in the office, Smith instructed Neal to search Plaintiff for weapons (none were found), and instructed Plaintiff to sit on a bench.

As he was sitting on the bench, Plaintiff asked, "What's gonna happen now?" Smith replied, "You're going to jail." Smith instructed Plaintiff to stand up so Neal could place handcuffs on him. Plaintiff stood up and Neal reached for his handcuffs. At that time, Plaintiff

---

[1]Doc. Nos. 33, 34, 35.

[2]Unless otherwise noted, the Background is from the concise statements of undisputed material facts (Doc. Nos. 24, 35).

-1-

"made a dash for the door." Smith grabbed him by his shirt and drew her taser. Plaintiff grabbed Smith's arm (the parties dispute the nature and extent of Plaintiff's contact with Smith). Officer Neal grabbed Plaintiff by his shirt from behind and pulled him away from the door. Neal grabbed Plaintiff around his waist, underneath his arms in a "bear hug" hold. Seconds later, Neal executed a takedown maneuver (the parties dispute whether this constituted a simple takedown or a "body slam") and took Plaintiff to the ground. While Plaintiff was on the floor, Neal handcuffed him, and then sat him back on the bench.

After the incident, Plaintiff complained of an injury. Neal and Smith took Plaintiff to Jefferson Regional Medical Center.

Plaintiff contends that as a result of this incident he suffered a fractured skull, bleeding on his brain, a broken collar bone, and received 52 stitches on his skull.

Plaintiff pled guilty to shoplifting and resisting arrest charges related to this incident.

Plaintiff has sued Defendants Neal and Smith in both their individual and official capacities. Plaintiff has also named the City of Pine Bluff ("City") as a Defendant.[3]

Plaintiff alleges violations of the United States and Arkansas constitutions, as well as Arkansas state law.[4] Defendants Neal and Smith assert qualified immunity and seek summary judgment.[5] The City also asks for summary judgment.[6]

## II. SUMMARY JUDGMENT STANDARD

A district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving

---

[3] Doc. No. 1.

[4] *Id*.

[5] Doc. Nos. 22, 23, 38.

[6] *Id.*

party is entitled to judgment as a matter of law."[7] The burden is on the moving party.[8] After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts.[9] A genuine issue of material fact is not the "mere existence of some alleged factual dispute between the parties."[10] "Instead, the dispute must be outcome determinative under prevailing law."[11] A fact is material when it "might affect the outcome of the suit under the governing law."[12]

The nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in his favor to allow a jury to return a verdict for him.[13] "If 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the nonmoving party – as long as those facts are not 'so blatantly contradicted by the record ... that no reasonable jury could believe' them."[14] Self-serving, conclusory statements without support are not sufficient to defeat summary judgment.[15]

In ruling on a motion for summary judgment, I must review the facts in a light most favorable to the nonmoving party and give that party the benefit of any inferences that logically

---

[7]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[8]*City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

[9]*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[10]*State Auto. Ins. Co. v. Lawrence*, 358 F.3d 982, 985 (8th Cir. 2004).

[11]*Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) (internal quotations omitted).

[12]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[13]*Id.* at 249; *Celotex*, 477 U.S. at 324.

[14]*Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

[15]*Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993).

can be drawn from those facts.[16] I may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue."[17] I am required, however, to resolve all conflicts of evidence in favor of the nonmoving party.[18]

## III. DISCUSSION

### A. State Law Claims

The Arkansas Civil Rights Act directs Arkansas courts to "look for guidance to state and federal decisions interpreting the Civil Rights Act of 1871, as amended and codified in 42 U.S.C. § 1983."[19] I, therefore, analyze Plaintiff's federal and state claims co-extensively using federal standards.[20]

### B. Individual Capacity Excessive Force Claim Against Neal

Qualified immunity protects officers from liability in a section 1983 case "unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known."[21] When determining whether an officer is entitled to qualified immunity at the summary judgment stage, "the official's conduct must be viewed through the prism of Rule 56—that is, [I] must take as true those facts asserted by plaintiff that

---

[16]*Matsushita*, 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005).

[17]*Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000).

[18]*Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

[19]Ark. Code Ann. § 16-123-105(c).

[20] See *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 n.3 (8th Cir. 2000) ("Claims premised under the Arkansas Civil Rights Act of 1993 are analyzed in the same manner as [federal] claims.") (citing Ark. Code Ann. § 16-123-103(c)); see also *Hess v. Ables*, 714 F.3d 1048, 1054 (8th Cir. 2013) (holding that "because [the appellant] did not explain why [her] ACRA claims warranted separate analysis, the district court did not err in dismissing the ACRA claims alongside the § 1983 claims') (citing *Lewis v. Jacks*, 486 F.3d 1025, 1030 (8th Cir. 2007)).

[21]*Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009).

are properly supported in the record." I "may not resolve genuine issues of material fact in [Neal's] favor at the summary judgment stage."[22]

In the Eighth Circuit, the test for qualified immunity has two parts: (1) whether there is sufficient evidence the officer "violated a constitutional right," and (2) whether the "constitutional right [the officer violated] was so 'clearly established' at the time of the alleged violation that a reasonable officer would have known that his conduct was unlawful."[23] If the answer to either of the two questions is no, then the officer is entitled to qualified immunity.[24] I must apply the doctrine of qualified immunity in a manner that "gives ample room for mistaken judgments by protecting all, but the plainly incompetent or those who knowingly violate the law."[25]

### 1. Constitutional Violation

42 U.S.C. § 1983 is "not itself a source of substantive rights."[26] So, Plaintiff must "identify the specific constitutional right allegedly infringed."[27] Here, Plaintiff claims that Neal violated his Fourth Amendment rights by using excessive force. Fourth Amendment excessive force standards apply to incidents "occurring during the transportation, booking, and initial detention of recently arrested persons."[28]

---

[22]*Tatum v. Robinson*, 858 F.3d 544, 552 (8th Cir. 2017).

[23]*Rohrbough v. Hall*, 586 F.3d 582, 585 (8th Cir. 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

[24]*Doe v. Flaherty*, 623 F.3d 577, 583 (8th Cir. 2010).

[25]*Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

[26]*Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation and internal quotation marks omitted).

[27]*Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

[28]*Chambers v. Pennycook*, 641 F.3d 898, 905 (8th Cir. 2011).

"To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances."[29] "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[30] This allows "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[31]

When evaluating the reasonableness of an officer's use of force, I consider "the totality of the circumstances and 'the severity of the crime at issue, the immediate threat the suspect poses to the safety of the officer or others, and whether the suspect is actively resisting or attempting to evade arrest by flight.'"[32] "[I] may also evaluate the extent of the suspect's injuries, as well as standard police procedures."[33] An officer's underlying intent or motivation is not relevant to an objective reasonableness analysis.[34]

Material facts remain in dispute as to reasonableness of the force used on Plaintiff. Plaintiff was an unarmed arrestee for a nonviolent crime. Plaintiff did attempt to flee and resisted arrest. However, this alone does not make Neal's use of force reasonable. The parties dispute when the fleeing and resisting stopped and the extent that Plaintiff posed a threat.

---

[29]*Brown*, 574 F.3d at 496 (citations and internal quotation marks omitted).

[30]*Graham*, 490 U.S. at 396.

[31]*Id.* at 396–97.

[32]*Smith v. Kan. City, Mo. Police Dep't*, 586 F.3d 576, 581 (8th Cir. 2009) (citation omitted).

[33]*Mann v. Yarnell*, 497 F.3d 822, 826 (8th Cir. 2007) (internal citations omitted); see also *Chambers*, 641 F.3d at 906 ("The degree of injury is certainly relevant insofar as it tends to show the amount and type of force used").

[34]*Graham*, 490 U.S. at 397.

Plaintiff contends that the fleeing and resisting stopped when Neal grabbed Plaintiff and put him the bear hug. At that point, Plaintiff contends the situation was under control. Defendants contend the situation evolved until Neal put Plaintiff on the ground. Plaintiff contends he simply reached for Smith in an attempt to keep his balance when Neal grabbed him. Neal and Smith contend he was grabbing at her to further his escape and to possibly gain access to her weapons. The video evidence is not clear on this issue.[35]

The parties also dispute the extent to which Plaintiff posed a threat. As noted above, Defendants contend Plaintiff could have been trying to access Smith's weapons during the scuffle. However, the incident occurred in a small office with a closed door.[36] Plaintiff was surrounded by three police officers.[37] During the attempted getaway, Neal immediately grabbed Plaintiff and placed him in a "bear hug" and then executed the disputed takedown.[38] Smith had her taser pointed at Plaintiff during the incident.[39] Furthermore, it is not clear that Plaintiff assaulted Smith. She did have some minor injuries after the incident, but it is not clear from the evidence how or at what point the injuries occurred. Plaintiff was not charged with assault.[40]

Additionally, a head laceration requiring 52 stitches, bleeding on the brain, a broken collar bone, and fractured skull are not de minimis injuries.

Accordingly, material facts remain in dispute regarding whether the degree of force used by Neal surpassed what was objectively necessary in the situation at hand and whether and to

---

[35] Doc. Nos. 27, 37 (officers' body cam video).

[36] Doc. No. 24, p. 4.

[37] Doc. Nos. 27, 37 (officers' body cam video).

[38] *Id.*

[39] *Id.*

[40] Doc. No. 35, p. 3.

what degree Plaintiff posed a threat. Therefore, Neal is not entitled to qualified immunity on this ground.

### 2. Clearly Established Constitutional Right

Having determined that Plaintiff has established a genuine dispute of material fact concerning the violation of a constitutional right, I must ask whether Neal is nonetheless entitled to qualified immunity on the ground that the law was not clearly established at the time of the incident.

A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[41] Plaintiff's right to be free from excessive force is clearly established.[42] Plaintiff is not required to point to precedent clearly establishing that Neal's precise conduct would violate his general right to be free from excessive force.[43]

I find that the general constitutional principles against excessive force that were clearly established at the time of the incident put a reasonable officer on notice that putting Plaintiff in a bear hug and throwing him head first to the ground in this case could be considered excessive force in violation of clearly established law.

### B. Individual Capacity Claim Against Smith

---

[41] *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008) (citation omitted). "[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, 'even though the very action in question has [not] previously been held unlawful.'" *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)(quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)).

[42] See *Chambers*, 641 F.3d at 908 (holding that an arrestee's right to be free from excessive force causing more than "de minimis injuries" was clearly established under the Fourth Amendment's prohibition against unreasonable seizures of the person).

[43] See *Winslow v. Smith*, 696 F.3d 716, 738 (8th Cir. 2012) (holding that the "unlawfulness must merely be apparent in light of preexisting law, and officials can still be on notice that their conduct violates established law even in novel factual circumstances") (quoting *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 531 (8th Cir. 2009)).

At the time of the incident Smith was acting as Neal's field training officer. Plaintiff asserts Smith failed "to provide appropriate training, supervision, direction, control, and instruction to Neal.[44] Plaintiff contends that "a reasonable officer in [] Smith's situation would have prevented a recruit in training under her supervision, direction, instruction, and control from utilizing such excessive force."[45]

Liability in a 42 U.S.C. § 1983 case is personal.[46] In other words, "[g]overnment officials are personally liable only for their own misconduct."[47] So, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights."[48] To that end, Plaintiff must provide evidence connecting the Smith to the challenged action.[49] Plaintiff's allegations against Smith are based on her supervisory position.[50] So, Plaintiff must show that the supervisor knew about the conduct and facilitated it, approved it, condoned it, or turned a blind eye to it.[51]

---

[44]Doc. No. 1, p. 6.

[45]*Id.* at 7.

[46]*Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017).

[47]*S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015).

[48]*Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)); see also *Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights).

[49]See *Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

[50]Doc. No. 1, p. 6-7.

[51]*Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir.1995); see also *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997) ("Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights.").

Plaintiff has provided no evidence that Smith ordered or directed Neal to perform the bear hug and subsequent takedown. Plaintiff has produced no evidence to suggest that Smith anticipated Neal was about to takedown Plaintiff, or received any notice of a pattern of unconstitutional acts committed by Neal.

A supervisor's failure to train an inferior officer may also subject the superior to § 1983 liability in her individual capacity, "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."[52] Additionally, Plaintiff must also prove that the failure to train "actually caused" the constitutional deprivation.[53]

Smith did approve of Neal's action after the incident. She said, "Good job."[54] Additionally, Smith and others in the room can be heard laughing and making comments about Plaintiff as they reviewed the video of the incident.[55] While this may not be a professional or appropriate reaction in this situation, it does not prove deliberate indifference that caused a constitutional violation.

A police officer may be liable for failure to "intervene to prevent the excessive use of force—where the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration . . . ."[56] Here, the video evidence showed that approximately 4 seconds elapsed between Plaintiff's "dash for the door" and Neal's takedown.[57]

---

[52] *Otey*, 121 F.3d at 1156 (quotation omitted).

[53] *Andrews*, 98 F.3d at 1078.

[54] Doc. No. 35, p. 3.

[55] *Id.*

[56] *Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009).

[57] Doc. No. 24, p.5.

Under these circumstances, Smith had no time to anticipate that Neal was about to "body slam" Plaintiff and there was no opportunity for Smith to stop him.

Accordingly, summary judgment is granted on Plaintiff's claim against Smith in her individual capacity.

    C.    **Official Capacity Claims and City of Pine Bluff Liability Claim**

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself."[58] So, a "suit against a public employee in his or her official capacity is merely a suit against the public employer."[59] Accordingly, Plaintiff's claims against the City and its employees, Neal and Smith, in their official capacities should be analyzed as against the city alone.

The City can be sued directly under 42 U.S.C. § 1983.[60] However, a municipality cannot be held liable merely because it employs a tortfeasor.[61] Instead, to prevail on this type of claim, Plaintiff must establish the City's liability for the alleged conduct.[62] Such liability may attach if

---

[58]See *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017).

[59]*Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); see also *Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

[60]See *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

[61]*A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality...cannot be liable on a respondeat superior theory").

[62]*Kelly*, 813 F.3d at 1075.

the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise."[63]

A "policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."[64] For a policy that is unconstitutional on its face, Plaintiff needs no other evidence than a statement of the policy and its exercise.[65] However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers."

Here, Plaintiff has failed to demonstrate that his constitutional rights were violated due to a City policy. The City's Use of Force Policy clearly states that "officers may use only that level of force that is objectively reasonable to bring an incident under control." So, that policy is constitutional on its face. Plaintiff contends that the City should have known that its policy allowing a new officer "more than an observational assignment" as part of its on the job training program[66] would obviously lead to a constitutional violation.[67] However, one incident does make a training program inadequate or constitutionally unsound, or show deliberate indifference. I cannot infer the existence of an unconstitutional policy from a single occurrence.[68]

---

[63]*Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018); see also *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

[64]*Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016).

[65]*Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007).

[66]Doc. No. 26-18.

[67]Doc. No. 34, p. 16.

[68]See *Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991).

Plaintiff can also assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise.[69] To show deliberate indifference, Plaintiff must prove that the City "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights."[70] Ordinarily, this is done by a plaintiff showing a "pattern of similar constitutional violations by untrained employees."

Plaintiff has provided no evidence of a deliberately indifferent failure to train or supervise, because he has not shown that the City "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Plaintiff's facts do not support the existence of any sort of pattern. Additionally, Neal had completed the Arkansas Law Enforcement Training Academy training on August 4, 2017, consisting of 525 hours of training, and the Pine Bluff Police Department New Hire School on August 11, 2017, consisting of 200 hours of training.[71]

Accordingly, summary judgment is granted on Plaintiff's claims against the City and Neal and Smith in their official capacities because he has not shown that his injuries resulted from an official policy, custom or a deliberately indifferent failure to train.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. No. 22) is hereby, GRANTED IN PART and DENIED IN PART. Summary judgment is denied as to

---

[69] See *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference").

[70] *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005).

[71] Doc. No. 24, p. 8.

Plaintiff's excessive force claim against Markeith Neal in his individual capacity and granted as to all other claims.

IT IS SO ORDERED this 28th of June, 2021.

BILLY ROY WILSON
UNITED STATES DISTRICT JUDGE